DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SEARS, ROEBUCK & CO.,**
Appellant,

v.

**FORBES/COHEN FLORIDA PROPERTIES, L.P.,** a Michigan Limited Partnership, and **CITY OF PALM BEACH GARDENS, FLORIDA,** a Florida Municipal Corporation,
Appellees.

No. 4D16-2314

[July 12, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Donald W. Hafele, Judge, and Edward A. Garrison, Acting Circuit Court Judge; L.T. Case No. 50-2014-CA-011945-XXXX-MB.

Gerald F. Richman and Leora B. Freire of Richman Greer, P.A., West Palm Beach, and Natalie J. Spears and Steven L. Merouse of Dentons US LLP, Chicago, Illinois, for appellant.

Bruce S. Rogow and Tara A. Campion of Bruce S. Rogow, P.A., Fort Lauderdale, and Robert M. Carson and Jeffrey B. Miller of Carson Fischer, P.L.C., Bloomfield Hills, Michigan, for appellee Forbes/Cohen Florida Properties, L.P.

R. Max Lohman and Abigail F. Jorandby of Lohman Law Group, P.A., Jupiter, Florida, for appellee City of Palm Beach Gardens.

LEVINE, J.

Sears, Roebuck has a lease with Forbes/Cohen for a store within the Gardens Mall. It attempted to sublease part of its store to Dick's Sporting Goods. However, the landlord disapproved of the sublease and collaborated with the City of Palm Beach Gardens, unbeknownst to Sears, to enact a resolution to now require both the landlord and the City to agree to any subdivision of space within the Gardens Mall.

The issues presented in this case are whether the City's resolution unconstitutionally impairs Sears's contract rights and whether that

resolution violates substantive due process because it has no criteria stating when approval to subdivide Sears's leased space may be granted or denied. As a related issue, we consider whether Sears is owed attorney's fees as a result of the City's alleged violation of substantive due process. Finally, we consider whether Sears has a contractual right to sublease.

We conclude the City's resolution is unconstitutional both because it impairs Sears's right to contract—and the contract rights emanating from the lease between Sears and Forbes/Cohen—and deprives Sears of its substantive due process rights. Consequently, we find Sears is a prevailing party under 42 U.S.C. sections 1983 and 1988 and is owed attorney's fees. We further conclude that Sears has the contractual right to sublease without authorization from Forbes. The remaining issues are without merit and we affirm without comment.

## FACTS

In 1984, Forbes/Cohen Florida Properties, L.P. ("Forbes") entered into a Land Lease to develop property within Palm Beach Gardens and construct a mall. Forbes then petitioned the City of Palm Beach Gardens (the "City") to approve construction for the mall. The City approved Forbes's petition and enacted the Palm Beach Gardens Planning Unit Development ("P.U.D.") through resolution.

The P.U.D. specifically requires that all anchor stores at the mall undergo architectural review "to achieve architectural design harmony and to maintain integrity throughout the project." Issuance of a building permit requires city council approval of any preliminary designs to ensure the proposed modifications do not "disrupt the architectural design, harmony and integrity" of the mall. Further, the P.U.D. restricts signage by limiting anchor tenants to "[o]ne wall sign for each anchor department store facade representing typical identification by sign logo, style, and illumination indigenous to that anchor department store . . . ."

In 1987, Forbes entered into a sublease with Sears, Roebuck & Co. ("Sears"). The thirty-year sublease gives Sears the option to extend its lease for four separate periods of ten years each so long as Sears was not in material default and was operating as a retail store. Additionally, the sublease gives Sears the "right" to sublease, stating:

> *[Sears] shall have the right to assign this Lease and to sublet from time to time the Demised Premises or any part thereof*; subject however, to the terms and provisions of the [Reciprocal

2

Easement Agreement]. No such assignment or subletting shall relieve Tenant of its obligations under this Lease . . . .

(emphasis added). Lastly, the sublease requires Sears to "comply with all laws and ordinances and the orders, rules, and regulations and requirements of all Federal, State, County and municipal governments . . . which may be applicable from time to time to the Demised Premises." However, the sublease also allows Sears the "*right to contest the applicability* of any laws, ordinances, orders, rules, regulations or governmental requests . . . ." (emphasis added).

Concurrent with the sublease, Sears entered into a Reciprocal Easement Agreement (the "R.E.A."). The R.E.A. mandates that Sears initially operate as a department store, but after twenty years, Sears could use its space for "retail and service purposes and for no other purposes." As to subleasing, the R.E.A. indicates that "Majors," that being anchor tenants like Sears, could "lease all or any portion(s) of its building and/or license departments therein" so long as the sublease otherwise complied with the R.E.A. The R.E.A also sets forth criteria for signage. The R.E.A. requires signs to comply with aesthetic and safety standards, for example prohibiting blinking lights and rooftop signs and requiring compliance with electrical codes. The R.E.A. also prohibits tenants from creating dangerous hazards within the mall. Finally, the R.E.A. provides that it exists for the "exclusive benefit of the Parties and the Fee Owner" and nothing in the R.E.A. should "be construed to create any rights in or for the benefit of any space lessee of any part of the Shopping Center Parcel."

In 2011, Sears began seeking a subtenant to sublease part of its two-story store and entered into negotiations with Dick's Sporting Goods. Sears informed Sidney Forbes, a partner of Forbes, of its plans.

Without informing Sears, Sidney met with the City, told the City of Sears's plans, and personally requested that the City enact a resolution. Forbes submitted a development application along with a $1,650 fee and then collaborated with the City in crafting the proposed resolution. The City passed Resolution 20-2012 (the "Resolution") as part of its consent agenda without taking any testimony.

The Resolution states that its purpose was to clarify the P.U.D. The Resolution requires the following:

Prior to any proposed structural modifications, installation of kiosks, and/or any subdivision of an anchor tenant space into any sub-space which requires separate business tax receipts

3

and/or newly separate licensing of any kind whatsoever for the business enterprise intending to occupy the newly created sub-space, anchor tenants must obtain City Council approval. Prior to seeking City Council approval the subject anchor tenant must obtain approval for the subject modification from mall ownership.

Sears, not knowing of the Resolution, informed Forbes of its plans to sublease to Dick's. Forbes claimed Dick's was inappropriate for the mall. Subsequently, Forbes sent Sears a letter stating that Sears's "contemplated actions . . . are beyond [Sears's] authority under the Sublease." The letter further stated that Forbes did "not consent to the marketing by Sears of any portion of its space within the Gardens and will not consent to any proposals that is not fully in compliance with all applicable restrictions and fully satisfies all of [Sears's] obligations." Then, at a subsequent meeting, Sidney told Sears that it was not within its rights to sublease to Dick's. Sidney believed Sears could not sublease to Dick's because Dick's was not a department store, Dick's did not have signage rights, and Dick's did not "belong" at the mall.

Sears filed a complaint seeking declaratory relief. As to Forbes, Sears sought a declaratory judgment stating that it had the right to sublease to Dick's. As to the City, Sears sought a declaratory judgment stating that the Resolution was an unconstitutional impairment of contract under the Florida and United States Constitutions and that the Resolution violated Sears's substantive due process rights. Lastly, Sears sought attorney's fees under 42 U.S.C. sections 1983 and 1988.[1]

During the pendency of litigation, Sears entered into a sublease with Dick's for one floor of Sears's two-floor lease. As per the sublease, Dick's was to operate as a sporting goods store. Furthermore, the sublease was contingent on Sears getting necessary government approvals, including approvals for signage as well as obtaining a favorable declaratory judgment.

Following the trial court's denial of the City's and Forbes's motions to dismiss and Sears's motion for summary judgment, the case went to trial. At trial, testimony established that Dick's was a "first-class" retailer. Further, Forbes conceded that Sears had the right to sublease so long as

---

[1] Sears also contended the Resolution was in fact an ordinance and was therefore void as the passing of the Resolution did not comply with statutory requirements for enacting ordinances. We find this argument to be without merit and affirm without comment.

4

it complied with the sublease and the R.E.A. Nevertheless, Forbes asserted the following reasons against the sublease: the proposed Dick's sublease was not compliant with the sublease and the R.E.A. because Dick's could not put up a sign, Sears could not exercise its option to extend its lease while subleasing to Dick's, Sears had not gotten the requisite architectural approvals for modification of the leased premises, and Dick's potential gun sales violated the R.E.A.'s prohibition on creating dangerous hazards.

Sears conceded that, under the sublease, the current signage plans were not compliant with municipal zoning standards. Sears noted that it would need to get city approvals and waivers, but that other anchor tenants at the mall had multiple signs and that it was a regular industry practice to work with municipalities in getting necessary approvals and waivers. Further, Sears conceded that it had not yet attained the necessary architectural approvals for the mall, but would do so upon favorable disposition of the declaratory judgment action. Finally, Sears had not exercised its option to renew its lease, which was set to expire in 2018.

The City's contention at trial was that the Resolution did not create new rights or obligations, but instead was administrative and merely interpreted, and reiterated, pre-existing requirements under the P.U.D. Further, the Resolution did not require approval for "subleasing," but required approval for "subdividing" anchor tenant space. Thus, the resolution did not impair Sears's contract rights nor did it violate substantive due process.

Sears argued that the prohibition on subdividing space without approval was tantamount to a prohibition on subleasing without approval. Further, the Resolution gave both the City and Forbes unfettered authority to decide whether to permit an anchor tenant, such as Sears, to sublease. This authority, as outlined in the Resolution, did not exist in the sublease, P.U.D., or R.E.A.

Following the conclusion of trial, the trial court did not make any findings of fact or conclusions of law nor did it declare the parties' rights with respect to the sublease, R.E.A. or P.U.D. Instead, the court found as follows:

> As to Count 1, the Court finds for the Defendant, [Forbes], who shall go hence without a day.

As to Counts 3, 4, 5, and 6, the Court finds for the Defendant, [the City], who shall go hence without a day.

Sears appealed.

**ANALYSIS**

I. DECLARATORY JUDGMENT

As a preliminary issue, Sears argues that, although the trial court's order was deficient as it failed to determine the rights of the parties or make any factual findings, we may nevertheless consider the merits of this appeal without remanding to the trial court. We agree.

Florida's Declaratory Judgment Act provides as follows:

> The circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed. No action or procedure is open to objection on the ground that a declaratory judgment is demanded. The court's declaration may be either affirmative or negative in form and effect and such declaration has the force and effect of a final judgment.

§ 86.011, Fla. Stat.

Under this Act, where a trial court denies a motion to dismiss, the trial court must "fully determine the rights of the respective parties, as reflected by the pleadings." *Local 532 of the Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO v. City of Fort Lauderdale*, 273 So. 2d 441, 445 (Fla. 4th DCA 1973). Thus, conclusory final judgments on declaratory judgment claims, which are devoid of factual findings or conclusions of law, are inadequate. *See id.*; *Hyman v. Ocean Optique Distribs., Inc.*, 734 So. 2d 546, 548 (Fla. 3d DCA 1999).

The final judgment in the present case simply found for Forbes and the City, stating they "shall go hence without a day." Consequently, the trial court failed to "fully determine the rights of the respective parties." *See Local 532*, 273 So. 2d at 445; *see also State Farm Mut. Auto. Ins. Co. v. Hinestrosa*, 614 So. 2d 633, 635 (Fla. 4th DCA 1993) (stating that the words "plaintiff take nothing and defendant go hence without day" are "words usually found in cases seeking only a money judgment rather than a declaratory judgment").

6

Review of a declaratory judgment generally requires adequate findings of fact and conclusions of law. *Trump Endeavor 12, LLC v. Fla. Pritikin Ctr., LLC*, 208 So. 3d 311, 312 (Fla. 3d DCA 2016). Thus, normally, we would remand for the trial court to make additional findings. *See Exotic Motorcars & Jewelry, Inc. v. Essex Ins. Co.*, 111 So. 3d 208, 209 (Fla. 4th DCA 2013). However, in the present case, the issues to be reviewed are purely legal in nature and the underlying facts are not in dispute. Therefore, we conclude remand is unnecessary, and find that we may consider the merits of Sears's appeal.

II.    IMPAIRMENT OF CONTRACT

Sears argues that the Resolution passed by the City, at the prompting of Forbes, unconstitutionally impaired its contract rights. We agree with Sears and find that the City's Resolution unconstitutionally impaired Sears's right to contract.

We review the constitutionality of statutes and municipal enactments with the de novo standard. *Kuvin v. City of Coral Gables*, 62 So. 3d 625, 629 (Fla. 3d DCA 2010).

Both the state and federal constitutions prohibit the impairment of contract. *See* Art. I, § 10, cl. 1, U.S. Const.; Art. I, §10, Fla. Const. It is a hallmark of the law in Florida that contracts are protected from unconstitutional impairment, and the Florida Supreme Court has unequivocally stated that "[t]he right to contract is one of the most sacrosanct rights guaranteed by our fundamental law. It is expressly guaranteed by article I, section 10 of the Florida Constitution." *Chiles v. United Faculty of Fla.*, 615 So. 2d 671, 673 (Fla. 1993); *see also In re Advisory Opinion to the Governor*, 509 So. 2d 292, 314 (Fla. 1987) ("It is . . . indisputable . . . that rights existing under a valid contract enjoy protection under the Florida Constitution.").

The Florida Constitution offers greater protection for the rights derived from the Contract Clause than the United States Constitution. *See Sarasota Cty. v. Andrews*, 573 So. 2d 113, 115 (Fla. 2d DCA 1991) (citing *Pomponio v. Claridge of Pompano Condo., Inc.*, 378 So. 2d 774, 780 (Fla. 1979)); James W. Ely, Jr., The Contract Clause: A Constitutional History 253 (2016) ("[T]he Florida Supreme Court has signaled its willingness to protect contracts more fully than the federal courts."). Thus, the Florida Supreme Court has recognized that it is "not bound to accept as controlling the United States Supreme Court's interpretation of a parallel provision of the federal constitution." *Pomponio*, 378 So. 2d at 779.

7

"To impair a preexisting contract, a law must 'have the effect of rewriting antecedent contracts' in a manner that 'chang[es] the substantive rights of the parties to existing contracts.'" *Searcy, Denney, Scarola, Barnhart & Shipley, etc. v. State*, 209 So. 3d 1181, 1191 (Fla. 2017) (citation omitted). "Total destruction of contractual expectations is not necessary for a finding of substantial impairment." *U.S. Fid. & Guar. Co. v. Dep't of Ins.*, 453 So. 2d 1355, 1360 (Fla. 1984). Rather, impairment is defined as "to make worse; to diminish in quantity, value, excellency or strength; to lessen in power; to weaken." *Pomponio*, 378 So. 2d at 781 n.41 (citation omitted); *Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n*, 169 So. 3d 145, 150 (Fla. 4th DCA 2015).

"Any legislative action which diminishes the value of a contract is repugnant to and inhibited by the Constitution." *In re Advisory Opinion*, 509 So. 2d at 314. For example, "[a] statute which retroactively turns otherwise profitable contracts into losing propositions is clearly such a prohibited enactment." *Id.* at 314-15. Indeed, it is a "well-accepted principle that virtually no degree of contract impairment is tolerable." *Pudlit*, 169 So. 3d at 150 (quoting *Coral Lakes Cmty. Ass'n v. Busey Bank, N.A.*, 30 So. 3d 579, 584 (Fla. 2d DCA 2010)); *see also Citrus Mem'l Health Found., Inc. v. Citrus Cty. Hosp. Bd.*, 108 So. 3d 675, 677 (Fla. 1st DCA 2013) ("[A]ny legislation that detracts from the value of a contract is subject to the constitutional proscription . . . .").

The conclusion, however, that "'virtually' no impairment is tolerable necessarily implies that some impairment is tolerable," though not as much impairment as would be "acceptable under traditional federal contract clause analysis." *Pomponio*, 378 So. 2d at 780. "[S]ome impairment" may be "tolerable" where the governmental actor can demonstrate a "significant and legitimate public purpose behind the regulation." *Searcy*, 209 So. 3d at 1192 (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983)).

In *Griffin v. Sharpe*, 65 So. 2d 751 (Fla. 1953), a piece of real property had a restriction whereby only residences and apartments could be built upon it. A few years before the restriction was set to expire, the legislature enacted a statute to extend the restriction. A purchaser subsequently purchased the property and sought to build a medical office on it. The Florida Supreme Court held that the legislative enactment violated the Contract Clause. The court described this legislative restriction as "legislative fiat," stating:

> The contested restriction is without doubt a private contract

between private individuals, and its attempted extension by the Legislature can in no wise [sic] be related to the reasonable exercise of the police power of the state and is a futile effort to by-pass constitutional prohibitions and re-write the agreement through governmental authority.

*Id.* at 752.

The Resolution passed by the City, at the behest of Forbes, states the following:

Prior to any proposed structural modifications, installation of kiosks, and/or any subdivision of an anchor tenant space into any sub-space which requires separate business tax receipts and/or newly separate licensing of any kind whatsoever for the business enterprise intending to occupy the newly created sub-space, anchor tenants must obtain City Council approval. Prior to seeking City Council approval the subject anchor tenant must obtain approval for the subject modification from mall ownership.

It is clear that the Resolution diminished Sears's interest in the contract, namely Sears's right to sublease. Although the Resolution does not mention subleasing specifically, total destruction of Sears's interest in the contract is not required to claim an impairment of contract. *U.S. Fid. & Guar.*, 453 So. 2d at 1360. The Resolution has "made worse" Sears's rights emanating from the contract. *See Pudlit*, 169 So. 3d at 150. Sears, although it can still enter into a subleasing agreement, as it has with Dick's, must now get approvals from both Forbes and the City before it can subdivide the property to act on that agreement. Thus, the Resolution has depreciated and diminished the value of Sears's contract.

Having concluded the Resolution is an impairment of contract, we must consider "whether the nature and extent of the impairment is constitutionally tolerable in light of the importance of the State's objective, or whether it unreasonably intrudes into the parties' bargain to a degree greater than is necessary to achieve that objective." *Searcy*, 209 So. 3d at 1192 (quoting *Pomponio*, 378 So. 2d at 780).

The City's public purpose justification for the Resolution is that it helps to strengthen and maintain the mall's aesthetic qualities. This justification is neither "significant" nor "legitimate," particularly where the P.U.D. *already* sets forth aesthetic standards for the mall and *already* requires architectural approvals. The City has failed to show how the

Resolution accomplishes anything to further its supposed purpose beyond what the P.U.D. already accomplishes. Additionally, the contract has been substantially impaired as it gives both the City and Forbes the unbridled discretion to disapprove of any attempts to divide property to effectuate a sublease. Thus, the impairment "unreasonably intrudes into the parties' bargain to a degree greater than is necessary to achieve that objective." *Id.* It is clear that the Resolution is an effort to "re-write the agreement through governmental authority," and that governmental authority's intervention resulted in the diminishment of Sears's interest in a pre-existing contract. *Griffin*, 65 So. 2d at 752.

Finally, the City contends that Sears has contractually waived its impairment of contract claim. The sublease states that Sears "shall . . . promptly comply with all laws and ordinances and the orders, rules, and regulations and requirements of all Federal, State, County and municipal governments . . . which may be applicable from time to time to the Demised Premises . . . ." The City argues that the parties anticipated amendments and changes to laws and rules and that Sears agreed to follow those laws and rules, as amended. We note, however, that in the very same paragraph of the contract, Sears reserved "*the right to contest the applicability* of any laws, ordinances, orders, rules, regulations or governmental requests . . . ." (emphasis added).

We must read the entire agreement as a whole, and "[t]he language being construed should be read in common with other provisions of the contract." *Royal Oak Landing Homeowner's Ass'n v. Pelletier*, 620 So. 2d 786, 788 (Fla. 4th DCA 1993); *Am. K-9 Detection Servs., Inc. v. Cicero*, 100 So. 3d 236, 238-39 (Fla. 5th DCA 2012). The two provisions, read together, indicate that Sears must follow all laws and ordinances, but that it has the right to challenge those laws and ordinances where they are illegal, or, as here, unconstitutional. Accordingly, Sears did not contractually waive this issue and is free to challenge the Resolution.

We therefore conclude that the Resolution is unconstitutional as it impairs Sears's contract and is not "reasonable and necessary to serve an important public purpose." *Searcy*, 209 So. 3d at 1192.

III.    SUBSTANTIVE DUE PROCESS

Sears next contends that the Resolution, in addition to being an unconstitutional impairment of contract, also deprives it of substantive due process because it requires Forbes and the City to approve subdivisions of anchor tenant space without also setting forth any standards or criteria upon which the City and Forbes are to base such a

decision.

An individual's substantive due process rights protect against the "mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *WCI Cmtys., Inc. v. City of Coral Springs*, 885 So. 2d 912, 914 (Fla. 4th DCA 2004). For a government policy to be unconstitutional, "it [is not] necessary that the record reveal that the governing body or its members have in fact acted capriciously or arbitrarily. It is the opportunity, not the fact itself, which will render an ordinance vulnerable." *ABC Liquors, Inc. v. City of Ocala*, 366 So. 2d 146, 150 (Fla. 1st DCA 1979). Thus, the Florida Supreme Court has instructed that

> [a]n ordinance whereby the city council delegates to itself the arbitrary and unfettered authority to decide where and how a particul[a]r structure shall be built or where located without at the same time setting up reasonable standards which would be applicable alike to all property owners similarly conditioned, cannot be permitted to stand as a valid municipal enactment.

*N. Bay Vill. v. Blackwell*, 88 So. 2d 524, 526 (Fla. 1956).

In *Drexel v. City of Miami Beach*, 64 So. 2d 317 (Fla. 1953), the plaintiff was denied a permit to build a parking garage. The applicable city ordinance stated that no parking garages should be built except "upon 'approval and permit by the City Council . . . after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use . . . .'" *Id.* at 318 (alteration in original). The court stated the ordinance was unconstitutional, reasoning:

> In the present ordinance there is found no guide whatever to aid the councilmen in deciding what permits should, and what permits should not, be granted. Reading the ordinance in a light most favorable to the city's position, each councilman was accorded the privilege of deciding in his own mind whether he had duly considered the traffic problem and when a majority of councilmanic minds concluded that such consideration had been duly given and that the proposed building would complicate traffic conditions, the composite thought would ripen into a power that would take away property. This, in our opinion, would be doing so in violation of the guaranties of the State and United States Constitutions.

*Id.* at 319.

Similarly, in *City of Miami Beach v. Fleetwood Hotel, Inc.*, 261 So. 2d 801 (Fla. 1972), the city enacted an ordinance in order to regulate rents. However, the ordinance failed to set "objective guidelines and standards for its enforcement . . . nor [could] such be reasonably inferred from the language of the Ordinance." *Id.* at 805. Further, the ordinance vested with a single individual, the City Rent Administrator, the "unbridled discretion to determine which accommodations are to be controlled and a number of other things." *Id.* at 806. The court concluded that the ordinance was unconstitutional because it failed to lay out any guidelines for its enforcement. *Id.* at 805-06; *see also Friends of the Great S., Inc. v. City of Hollywood ex rel. City Comm'n*, 964 So. 2d 827, 830 (Fla. 4th DCA 2007) ("In order for ordinances which provide decisional authority to be constitutional, they must have mandatory objective criteria to be followed when making a decision."); *ABC Liquors*, 366 So. 2d at 149 ("Any standards, criteria or requirements which are subject to whimsical or capricious application or unbridled discretion will not meet the test of constitutionality.").

The City contends substantive due process protections do not apply to non-legislative zoning decisions such as the Resolution. It is true that substantive due process challenges are permitted for the alleged deprivation of *constitutional* rights, and not the alleged deprivation of rights arising under state law, such as zoning decisions. *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994); *Kantner v. Martin Cty.*, 929 F. Supp. 1482, 1486 (S.D. Fla. 1996). Thus, decisions based on the application of zoning regulations will not be susceptible to substantive due process challenges. *See Kantner*, 929 F. Supp. at 1486-87. However, a land use regulation *itself* may be challenged under substantive due process. *See Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213-15 (11th Cir. 1995) (addressing the merits of whether a zoning regulation prohibiting automobile sales violated the plaintiff's substantive due process rights); *Kantner*, 929 F. Supp. at 1487. In the present case, it is the Resolution itself, not the application of the Resolution, that is being challenged. Thus, the Resolution may be subject to a substantive due process challenge.

In the present case, the Resolution states:

> Prior to any proposed structural modifications, installation of kiosks, and/or any subdivision of an anchor tenant space into any sub-space which requires separate business tax receipts and/or newly separate licensing of any kind whatsoever for

12

> the business enterprise intending to occupy the newly created sub-space, anchor tenants must obtain City Council approval. Prior to seeking City Council approval the subject anchor tenant must obtain approval for the subject modification from mall ownership.

The Resolution requires a tenant to "obtain approval" from both the City Council and "mall ownership," that being Forbes, to subdivide its anchor tenant space, but it fails to identify any standards or criteria that would govern when approval is to be granted or withheld. The Resolution, in other words, grants the City and Forbes with "unbridled discretion" in this matter. *See Fleetwood Hotel*, 261 So. 2d at 806. Therefore, we conclude that the Resolution violates substantive due process and "cannot be permitted to stand as a valid municipal enactment" because it permits the City and Forbes to arbitrarily and capriciously deprive Sears of its property rights as a Tenant pursuant to the contract negotiated and executed by the parties. *See N. Bay Vill.*, 88 So. 2d at 526.[2]

The City argues that it had a rational basis for enacting the Resolution, claiming the Resolution preserves the "form, function, and composition of the Gardens PUD" and promotes "the health, safety, and welfare of the public at large." Although the interests described may be a legitimate governmental interest, *see City of Miami Beach v. Ocean & Inland Co.*, 3 So. 2d 364, 366-67 (Fla. 1941), the Resolution's total lack of guidance would allow for arbitrary and capricious enforcement "having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *See WCI Cmtys.*, 885 So. 2d at 914; *cf. Estate of McCall v. United States*, 134 So. 3d 894, 901-03 (Fla. 2014) (stating a medical malpractice statute was irrational when it treated multiple claimants differently from a single claimant because there was no reason to treat the two categories differently).

We next address Sears's argument that it is entitled to an attorney's fee award against the City under 42 U.S.C. sections 1983 and 1988. Under section 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

---

[2] We note that our opinion is limited to the Resolution itself. We express no comment as to the architectural review requirements found within the P.U.D. nor do we comment on any other municipal ordinance or code.

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1988 provides for attorney's fees, stating, "In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

As a preliminary issue, municipalities are liable under section 1983 but only if a plaintiff shows: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). As discussed above, Sears's substantive due process rights were violated, thus satisfying the first prong. Furthermore, Sears has satisfied the second and third prongs because the City formally and expressly created and adopted the unconstitutional Resolution. *See Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) ("Policy, in the narrow sense of discrete, consciously adopted courses of governmental action may be fairly attributed to a municipality . . . because (1) it is directly 'made by its lawmakers,' i.e., its governing body . . . ." (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978))).

Section 1988 requires courts to conduct a two-part inquiry. First, "whether the plaintiff is a prevailing party," and second, "if the plaintiff is a prevailing party, what constitutes a reasonable fee award." *Boston's Children First v. City of Boston*, 395 F.3d 10, 14 (1st Cir. 2005). As to the first inquiry, "[a] plaintiff 'prevails' . . . 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). Having a declaratory judgment entered in a party's favor will generally satisfy the "prevailing party" test. *See id.* A prevailing party is "ordinarily" entitled to recover attorney's fees "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted).

As a consequence of the present appeal, Sears is a prevailing party under section 1988 as it has obtained the declaratory relief it sought.

Citing *Farrar*, the City argues that, even assuming Sears prevailed in

its appeal, any victory on Sears's part would be a merely nominal victory for which Sears would not be entitled attorney's fees. In *Farrar*, the plaintiff sought substantial monetary damages but received only a nominal award. The Court held that the plaintiff was not entitled to attorney's fees. Although the plaintiff was technically a "prevailing party," the plaintiff had failed to prove damages, "an essential element of his claim for monetary relief." *Id.* at 114-15. Thus, the Court stated that in such situations, "the only reasonable fee is usually no fee at all." *Id.*

The City contends that because Sears has not sought damages as part of its substantive due process claim, Sears should not be entitled to attorney's fees. We conclude, however, that *Farrar* is distinguishable. In *Farrar*, the plaintiff did not prevail in his attempt to secure substantial damages whereas in the present case Sears has received precisely what it requested: declaratory relief. The United States Supreme Court has "repeatedly held . . . an injunction or declaratory judgment" will satisfy the prevailing party test. *Lefemine*, 568 U.S. at 4; *see also Sanchez v. City of Austin*, 774 F.3d 873, 882-83 (5th Cir. 2014) (explaining that *Farrar* does not control where a party sues for, and obtains, declaratory or injunctive relief even if the party receives only nominal damages). Here, because Sears has "materially alter[ed] the legal relationship between the parties," we conclude Sears is entitled to attorney's fees.

On remand, the trial court should, in calculating Sears's fees, consider both the hours expended and the reasonableness of the hourly rate and "whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 433-37; *see also Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) ("A court will generally determine what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome.").

IV.   SUBLEASING RIGHTS

Sears also argues it has the contractual right to sublease and may do so without Forbes's approval. Thus, Sears asserts the trial court erred when it failed to award declaratory relief in its favor.

In interpreting the Sears-Forbes sublease, we must "give effect to the plain and ordinary meaning of its terms." *Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So. 2d 827, 829 (Fla. 4th DCA 2004). "Words should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable

construction is preferred to one that is unreasonable." *Id.* (citation omitted).

The Sears-Forbes sublease states, "[Sears] shall have the *right to assign this Lease and to sublet* from time to time the Demised Premises or any part thereof; subject however, to the terms and provisions of the R.E.A." (emphasis added). Although the sublease indicates certain restrictions apply should Sears seek to sublease "all or substantially all of the Demised Premises," these restrictions do not apply because Sears seeks to sublease less than "all or substantially all" of the premises, that being only one floor of its two story mall location. Similarly, the R.E.A. states that Sears may "lease all of any portion(s) of its building and/or license departments therein . . . ." While the R.E.A. states Sears's space must be used for "retail and service purposes and for no other purposes," this restriction is also not prohibitive as Dick's is a retailer. Therefore, we conclude Sears may sublease to Dick's without obtaining approval from Forbes.

Forbes contends that, even if Sears does have subleasing rights, Dick's would have no right to install a sign as it is not permitted under the R.E.A because Dick's is not a party to the R.E.A.

The R.E.A does not expressly prohibit sublessees, such as Dick's, from installing signs. Rather the R.E.A. puts in place criteria by which signs are to be installed and maintained. This signage criteria does not expressly prohibit a sublessee from installing a sign nor does it prohibit Sears from granting a sublessee the right to install a sign.

Generally, a sublessee can have no more rights to the subleased premises than the sublessor had. *See Thal v. S.G.D. Corp.*, 625 So. 2d 852, 853 (Fla. 3d DCA 1993). As a corollary to that rule, where a lease includes the right to sublease, the sublessor may grant any rights and privileges the sublessor has except where specifically prohibited. *See Max & Tookah Campbell Co. v. T. G. & Y. Stores*, 623 P.2d 1064, 1067 (Okla. Civ. App. 1981); Restatement (Second) of Prop.: Landlord & Tenant § 15.1 (Am. Law Inst. 1977) ("The interests of the landlord and of the tenant in the leased property are freely transferable, unless: . . . (3) the parties to the lease validly agree otherwise."). Consequently, Sears has the right to grant Dick's signage rights that Sears has under the Forbes-Sears sublease and the R.E.A.

Additionally, in interpreting an agreement, "the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose." *Am. K-9 Detection Servs., Inc. v. Cicero,*

100 So. 3d 236, 238-39 (Fla. 5th DCA 2012) (citation omitted).  It would be unreasonable to conclude that both the Forbes-Sears sublease and R.E.A. expressly and unequivocally permit Sears to sublease to a retailer while at the same time conclude that the R.E.A.'s signage criteria impliedly prohibits a retail sublessee, such as Dick's, from installing a sign.  Where the contract unambiguously gives Sears the right to sublease, we will not rewrite the parties' agreements to add to the agreement, such as in this case, a prohibition on signage.  *See Peach State Roofing, Inc. v. 2224 S. Trail Corp.*, 3 So. 3d 442, 445 (Fla. 2d DCA 2009).  To do so would effectively eviscerate Sears's right to sublease and render its express contractual rights merely illusory.

Forbes has also stated that the sublease is set to terminate soon and Sears would be unable to extend the sublease if it subleases to Dick's.  However, no such limitation appears in the sublease.  The sublease states that Sears "shall have the right to extend the term of this Lease for Four (4) separate periods of ten (10) years each" so long as Sears is not in "material default at the time of the exercise of such right" and Sears is "operating the Demised Premises for retail purposes."  Further, nothing in the sublease indicates Sears's subleasing rights exist only for the initial thirty-year term.  Thus, we conclude Sears may extend its lease so long as it is not in material default and is operating the leased premises for retail purposes.

Forbes contends that Sears has asked us to "approve" its sublease with Dick's.  Sears has neither asked this court, nor the court below, to explicitly approve of its lease with Dick's *in toto*, nor do we do so here.  Our opinion is limited to our interpretation of the Sears-Forbes sublease and the R.E.A., and our conclusion that nothing within those agreements requires Sears to seek approval before subleasing one floor of its two-story lease, within the mall, to either Dick's or any other retailer.  We make no comment on whether aspects of the Sears-Dick's sublease, either as planned or as implemented in the future, violate existing contractual obligations, the P.U.D., or other any law or regulation.[3]

## CONCLUSION

---

[3] Specifically, Forbes has argued (1) that Dick's potential sale of guns violates the R.E.A.'s prohibition on creating "dangerous hazards" and (2) Sears has not gotten the necessary approvals for signage.  We do not consider the first argument as it has been made prematurely.  As to the second argument, while we conclude Sears may grant its signage rights to Dick's as part of a sublease, we do not comment on whether any planned or implemented sign will in fact comply with the P.U.D. or any other local ordinance.

We conclude that the City unconstitutionally impaired Sears's right to contract and deprived Sears of its rights to substantive due process. Because the City's Resolution deprived Sears of substantive due process, Sears is also owed attorney's fees under 42 U.S.C. sections 1983 and 1988. Finally, we conclude that the trial court erred in not granting declaratory relief in Sears's favor, and we specifically find that Sears has a right to sublease, pursuant to the 1987 lease agreement.

*Affirmed in part, reversed in part, and remanded with directions.*

WARNER and FORST, JJ., concur.

\*         \*         \*

***Not final until disposition of timely filed motion for rehearing.***

18